```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT


TRANSCONTINENTAL INSURANCE        :
COMPANY; NATIONAL FIRE            :
INSURANCE OF HARTFORD; and        :
CONTINENTAL CASUALTY COMPANY,     :
                                  :
            Plaintiffs,           :
                                  :
     v.                           :   Case No. 1:06-CV-213
                                  :
                                  :
ENGELBERTH CONSTRUCTION, INC.     :
and MOUNT SNOW GRAND SUMMIT       :
HOTEL AND CROWN CLUB OWNERS       :
ASSOCIATION, INC., a/k/a Grand    :
Summit Resort Hotel and           :
Conference Center Owners          :
Association, Inc.,                :
                                  :
            Defendants.           :
_____   :
```

<u>RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF
INSURER'S DUTY TO DEFEND CLAIMS, AND TO DISMISS, STAY, OR ABSTAIN
   FROM THE REMAINING CLAIMS PENDING RESOLUTION OF STATE COURT
                            ACTION</u>
                         (Paper 24)

I.   <u>Introduction</u>

     Pending before the court are two motions by Defendant Engelberth Construction, Inc. ("Engelberth")-- partial summary judgment on Plaintiff insurer's duty to defend claims; and to dismiss, stay or abstain from the remaining claims pending resolution of the state court action.  For the following reasons, the motion for summary judgment and the motion to dismiss are GRANTED.

                                1

II. Background

The following facts are undisputed unless otherwise noted:

Engelberth is a construction firm who has an insured-insurer relationship with Transcontinental Insurance Company, National Fire Insurance Company of Hartford, and Continental Casualty Company, (collectively "CNA" or "Plaintiff's Insurer").  CNA issued successive one-year insurance policies to Engelberth covering the period June 1, 1996 through June 1, 2004.  It is disputed whether the terms of each "new policy" are similar and contain identical terms as to whether CNA would defend, cover, and indemnify Engelberth against alleged damages from its general contractor work, but the disputed terms relate to issues the Court has determined will be dealt with in the state court lawsuit.

Engelberth acted as general contractor for the Mount Snow Grand Hotel project in 1998.  Engelberth worked with the architectural firm JSA, Inc. and development company Grand Summit Resort Properties.  JSA and Engelberth hired at least ten subcontractors.  Engelberth's subcontractors were to build the hotel and install its utility systems and JSA was responsible for the overall design of the building, supervised its construction and retained subcontractors to design the heating and air

conditioning system.  The hotel was built in 1998 and opened at the end of that year.

In December 2003, the Mount Snow Grand Summit Hotel and Crown Club Owners Association, Inc. (also known as Grand Summit Resort Hotel and Conference Center Owners Association, Inc.), (the "Hotel"), sued Engelberth, JSA and Grand Summit Resort Properties in Windham Superior Court (the "state lawsuit").  The complaint alleged negligent construction or design of the dormers and heating system of the Hotel, and that the defects constituted breach of warranties and breach of contract.  JSA and Grand Summit Resort Properties brought cross-claims against each other and Engelberth.  Engelberth and JSA filed ten third-party complaints against various subcontractors.  All of these parties are potentially liable for damages.

Engelberth submitted the state court complaint and the Hotel's expert report to CNA requesting coverage.  In a January 22, 2004 letter, CNA agreed to defend Engelberth, under a reservation of rights, including "the right to withdraw the defense should the lawsuit against Engelberth Construction Inc[.] not present a claim potentially covered under the Policy." (Paper 24-11, Ex. 7).  Later, in an August 31, 2005 letter, CNA reserved "the right to withdraw from the defense and seek to recoup defense fees and costs and any indemnity payment if it is determined that there is no coverage for all or part of this

claim or the damages." (Paper 32-3, p. 3). Since January 2004, CNA has defended Engelberth in the state lawsuit, which has yet to be tried.

In November 2006, CNA brought a declaratory judgment action in this Court requesting judicial determination that it has no obligation to provide a defense or to indemnify Engelberth in the state lawsuit and seeking reimbursement for costs incurred, plus interest, in defending and indemnifying Engelberth or alternatively, an allocation between the covered and uncovered costs, fees and expenses.

Engelberth moves for summary judgment on CNA's duty to defend, and to dismiss, stay, or abstain from the remaining claims pending resolution of the state lawsuit.[1]  CNA opposes the motions, citing a need for discovery, and questions of material fact as to when Engelberth first knew of the alleged damages, when Engelberth completed the work and what that work entailed. Discovery has not yet commenced in this case and has been stayed pending resolution of these motions.

---

[1] Because the motion contains facts outside the pleadings, the motion has been framed as a motion for summary judgment under Federal Rule of Civil Procedure 56, rather than a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

III. <u>Motion for Summary Judgment on Insurer's Duty to Defend</u>

    A. <u>Standard for Summary Judgment</u>

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence is reviewed in a light most favorable to the non-moving party with all ambiguities and reasonable inferences drawn in favor of the non-moving party.  <u>See</u> <u>EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.</u>, 228 F.3d 56, 61 (2d Cir. 2000).  Once the moving party has presented parts of the record illustrating that there is no genuine issue as to any material fact, the nonmoving party must present specific facts showing there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).

    B. <u>Need for Discovery</u>

CNA asserts Engelberth's motion for summary judgment cannot be granted because there is a need for discovery.  There is no need for discovery though, because the Court determines the duty to defend by comparing "the allegations in the complaint of the underlying suit to the terms of coverage in the policy."  <u>City of Burlington v. Nat'l Union Fire Ins. Co.</u>, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994); <u>accord</u> <u>Garneau v. Curtis & Bedell, Inc.</u>,

158 Vt. 363, 366, 610 A.2d 132, 133-34 (1992).  Any disputed terms in insurance policies are construed according to their "plain, ordinary, and popular" meaning and all ambiguities are resolved in favor of the insured, because the policy is prepared by the insurer.  <u>Village of Morrisville Water & Light Dep't v. U.S. Fidelity & Guar. Co.</u>, 775 F. Supp. 718, 724 (D. Vt. 1991).  The complaint in the state lawsuit is part of the record and both parties have attached the relevant terms of coverage to their papers.  (Paper 24-6, Ex. 4 Superior Court Amended Compl.; Paper 24-2, Ex. 1 Commercial General Liability Form; and Paper 32-3).

An insurer's duty to defend is broader than its duty to indemnify.  <u>See</u> <u>Garneau v. Curtis & Bedell, Inc.</u>, 158 Vt. 363, 366, 610 A.2d 132, 134 (1992).  The duty to defend exists "whenever it is clear that the claim against the insured might be of the type covered by the policy."  <u>Id.</u> (<u>citing</u> 7C J. Appleman, Insurance Law & Practice § 4684.01, at 99 (1979) and <u>Commercial Union Ins. Co. v. Henshall</u>, 262 Ark. 117, 123 (1977) (duty to defend arises where it is possible that damage might fall within policy coverage)).  Conversely, there is no duty to defend if as a matter of law, there is no duty to indemnify.  <u>Id.</u>

In the state lawsuit, the underlying complaint includes claims of negligence, breach of contract and breach of warranties.  Specifically, it alleges design and construction defects which render the condominium units uninhabitable and

unmerchantable, requiring redesign, renovation and repair. (Paper 24-6, Ex. 4 at 6-7).

According to the policy terms, CNA promises to pay damages that Engelberth becomes legally obligated to pay due to "property damage" to which the insurance applies.[2] CNA also has the right and the duty to defend Engelberth against any "suit" seeking those damages, but will have no duty to defend Engelberth against any "suit" seeking damages for . . . "property damage" to which the insurance does not apply. (Paper 24-2, Ex. 1 at Section I.A.1.a.).

"Property damage" is defined in the policy as:

Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
Id. at Section V.17.a-b.

The policy then limits this coverage.  It specifies that coverage extends only to "property damage" that is "caused by an 'occurrence' that takes place in the 'coverage territory,'" and "occurs during the policy period." Id. at Section I.A.1.b.1-2.

The policy specifically defines both "occurrence" and "coverage territory," and neither of these definitions appears to

---

[2] The policy also applies to bodily injury, but there are no claims of bodily injury involved in the state lawsuit.

exclude the property damages alleged in the state lawsuit. "Coverage territory" is anywhere in the United States -- the alleged property damage occurred in Vermont. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at Section V.13. In Vermont, an "accident" has been defined as "an unexpected happening without intention and design." Commercial Union Ins. Co. v. City of Montpelier, 134 Vt. 184, 186, 353 A.2d 344, 346 (1976) (quoting Anton v. The Fidelity & Casualty Co., 117 Vt. 300, 305, 91 A.2d 697, 700 (1952)).

It has been acknowledged that "an insurer will be released from its duty to defend only if there is no factual or legal basis on which the insurer may be obligated to indemnify." Nationwide Mutual Fire Ins. Co. v. Petty, 923 F. Supp. 63, 65 (D. Vt. 1996); see also Allstate Ins. Co. v. Zuk, 78 N.Y.2d 41, 45, (N.Y. 1991) ("an insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision").

Presently there are two other defendants and multiple third-party defendants in the state lawsuit and any of these parties may be found liable. It is possible that the subcontractors hired by Engelberth could be found liable, and Engelberth would seek indemnity for the damages under the CNA insurance policy.

CNA has therefore not established as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify Engelberth under any policy provision and CNA cannot be relieved from its duty to defend.

    C. Asserted Questions of Material Fact

        1.   When Engelberth first knew of the alleged damages

Because Engelberth may have known of the alleged damages as early as 1999, but did not notify CNA until January 9, 2004, CNA claims there is a question of material fact. CNA urges that this fact is material because it bears on the late notice defense and the "Known or Continuing Injury or Damage" endorsement.

Engelberth notes that in the state lawsuit "the Owners allege Engelberth should have been aware that the design and construction was improper. Thus, the status of the construction at the date of completion (i.e., the existence of property damage) and Engelberth's knowledge will be litigated in the state court action." (Paper 34). Likewise, in CNA's August 31, 2005 letter to Engelberth discussing coverage for the state lawsuit, CNA acknowledges "Plaintiffs claim that Defendants were notified of the design and construction flaws but failed to remedy the defects. . . ." (Paper 32-3 at 3).

        2.   <u>When Engelberth completed work and what that work entailed</u>

It is also CNA's position that whether a certain exclusion in the policies applies, creates a question of material fact

precluding summary judgment. The applicable exclusion relied upon by CNA is as follows: "Exclusion for Damage to Your Work," which excludes coverage for "'Property damage' to 'your work' arising out of it or any part of it and included in the 'products completed operations hazard.'" Id. at Section I.A.2.l. "Your Work" is defined as "Work or operations performed by you or on your behalf; and Materials, parts or equipment furnished in connection with such work or operations." Id. at V.21. The exclusion, however, by its own terms, "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Id. at Section I.A.2.l.

It is the insurer's burden to prove that an exclusionary clause applies, and exclusionary clauses "are to be strictly construed against the insurer." Nationwide Mut. Fire Ins. Co. v. Petty, 923 F. Supp. 63, 65 (D. Vt. 1996).

In the state lawsuit there has been no determination of liability against any party, including the subcontractors who have been sued by Engelberth, so at this stage, it cannot be established if the alleged property damage is a result of Engelberth's own actions or its subcontractors. Therefore, the claims might be covered by the policy.

Engelberth has established "a prima facie case of coverage from which the duty to defend [has] resulted." Commercial Union Ins. Co. of America v. Henshall, 262 Ark. 117, 123, 124 (1977).

Accordingly, Defendant's motion for summary judgment on Plaintiff Insurer's duty to defend is GRANTED.

IV. Motion to Dismiss, Stay or Abstain From the Remaining Claims Pending Resolution of State Court action.

Engelberth contends that CNA's claims for indemnification and compensation should be dismissed because they are not ripe. The ripeness doctrine "prevents the premature adjudication of issues that may never arise," by ensuring that "there is 'a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'"  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. New York State Dep't of Envtl. Conservation, 79 F.3d 1298, 1305 (2d Cir. 1996) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).  The relevant inquiry is "whether we could benefit from deferring initial review until the claims we are called on to consider have arisen in a more concrete and final form."  Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005).  In this case, the Court could benefit from deferring review until liability is determined and CNA's claims for indemnification and compensation are more concrete.

Ripeness depends on two factors: "the fitness of the issues for adjudication and the hardship to the parties that would

11

result from withholding review." Motor Vehicle Mfrs. Ass'n of U.S., Inc., 79 F.3d at 1305. With fitness, issues are ripe "when they would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." Green Mountain Chrysler Plymouth Dodge Jeep v. Dalmasse, No. 2:05-cv-302, 2006 U.S. Dist. LEXIS 86805, at *24 (D. Vt. Nov. 30, 2006) (quoting Simmonds v. INS, 326 F.3d 351, 359 (2d Cir. 2003)).

The issues in this case would benefit from further factual development. It has not yet been established whether Engelberth or its subcontractors are liable. Liability of the various parties will be determined in the state lawsuit, narrowing and focusing the indemnity and compensation claims.[3]

The hardship factor is the prudential prong of the ripeness analysis and requires the Court to "gauge the risk and severity of injury to a party that will result if the exercise of jurisdiction is declined." Murphy, 402 F.3d at 347. Even if the issues could benefit from further factual development, a

---

[3] CNA cites Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005), for the proposition that an issue concerning the scope of insurance coverage plainly satisfies the standard for ripeness. In that case, coverage was undisputed and the litigation focused on interpreting the plain meaning of a clause regarding the duration of time for which the insurer had to provide coverage for lost profits after the September 11th terrorist attacks. This case involves multiple clauses of an insurance policy that could affect indemnity, depending on the outcome of an underlying state court action.

"substantial hardship" resulting from the delay in adjudicating the claim could "tip[] the balance in favor of exercising jurisdiction on prudential grounds."  <u>Dalmasse</u>, 2006 U.S. Dist. LEXIS 86805 at *24-25.  CNA fails to persuade the Court however, that they will suffer a substantial hardship from a delay in adjudicating the indemnity and compensation claims.  CNA initiated this declaratory judgment action after providing a defense for almost three years.  Therefore, the risk and severity of injury is not extreme enough to tip the balance in favor of exercising jurisdiction.

Accordingly, Defendant's motion to dismiss Plaintiff's remaining claims pending resolution of the state court action is GRANTED.

V.   <u>Conclusion</u>

Defendant's motion for summary judgment on Plaintiff Insurer's duty to defend is GRANTED.  Defendant's motion to dismiss the remaining claims pending resolution of the state lawsuit is GRANTED.  Plaintiff's remaining claims for indemnity and compensation are dismissed without prejudice pending resolution of the state lawsuit.

Although the Hotel is named as a defendant in this action and has filed an answer, it has not participated in the questions raised by CNA and Engelberth.  It appears to the Court the only reason the Hotel is a defendant is in the event the Court would

deal with questions of indemnity.  Since this decision does not address questions of indemnity, which presumably will be decided in the state lawsuit, the Court, on its own motion, dismisses without prejudice the claims against Mount Snow Grand Summit Hotel and Crown Club Owners Association, Inc., also known as Grand Summit Resort Hotel and Conference Center Owners Association, Inc.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 8th day of November, 2007.

>                /s/ J. Garvan Murtha
>           J. Garvan Murtha
>           United States District Judge